**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Classes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

NOUCHIE VELLON, *on behalf of*
*himself and others similarly situated*,

        Plaintiff,

    v.

THE CHEFS' WAREHOUSE, INC.,
DAIRYLAND USA CORPORATION, and
MIGUEL VARGAS

        Defendants.

_____

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff NOUCHIE VELLON ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, brings this Class Action Complaint against Corporate Defendant THE CHEFS' WAREHOUSE, INC. ("Chefs' Warehouse" "Defendant Chefs' Warehouse"), Corporate Defendant DAIRYLAND USA CORPORATION ("Dairyland" or "Defendant Dairyland"), and Individual Defendant MIGUEL VARGAS ("Mr. Vargas" or "Defendant Vargas," collectively "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks to bring a stop to, and to obtain redress for, those harmed by Defendants' unlawful and discriminatory criminal history screening policies and practices, which have been used to deny employment opportunities to otherwise qualified job applicants.

2.      Plaintiff brings this lawsuit on behalf of himself and all others similarly situated against Defendants for willful and/or negligent violations of (1) the New York City Human Rights Law ("NYCHRL"), as amended by the Fair Chance Act, N.Y.C. Admin. Code § 8-101 *et seq.*, and (2) the New York Fair Credit Reporting Act ("NY FCRA"), N.Y. Gen. Bus. Law § 380 *et seq.*, and (3) the federal Fair Credit Reporting Act, 15 USC § 1681 *et. seq.* ("FCRA").

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action as defined by 28 U.S.C § 1332(d)(1)(B), whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

4.      This Court also has jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 because this Complaint contains a federal cause of action. The Court has supplemental jurisdiction over Plaintiff's New York State law claims pursuant to 28 U.S.C. §1367.

5.      The Court has personal jurisdiction over Defendants because Defendants do business in New York and because the acts and omissions giving rise to this Complaint took place in New York.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

*Plaintiff*

7.      Plaintiff Nouchie Vellon is a citizen of New York and a resident of Bronx County.

*Defendants*

8.      Corporate Defendant The Chefs' Warehouse, Inc. is a national specialty food distributor.  It is incorporated in Delaware with a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877, and an address for service of process at c/o Corporation Service Company, 225 Asylum Street, 20th Floor, Hartford, CT 06103.

9.      Corporate Defendant Chefs' Warehouse's place of business in New York City is located at 240 Food Center Drive, Bronx, NY 10474.

10.     Corporate Defendant Dairyland USA Corporation is Chefs' Warehouse's operating company in New York City.  It is incorporated in New York but also has a principal place of business at 100 East Ridge Road, Ridgefield, CT 06877. Its address for service of process is c/o Corporation Service Company, 80 State Street, Albany, NY 12207.

11.     Individual Defendant Miguel Vargas was the Director of Transportation and Routing at Chefs' Warehouse when Plaintiff applied for employment there.

## STATEMENT OF FACTS

12.     Plaintiff has a conviction history.

13.     Sometime around the beginning of July 2021, Plaintiff applied online for employment with Defendants.   On July 8, 2021, he received an invitation to interview at Defendants' hiring event on July 14, 2021.

14.     Sometime around July 8, 2021, Plaintiff also received a link from Defendants directing him to authorize a background check with Checkr, which Plaintiff did.

15.     On July 14, 2021, Plaintiff arrived at Defendants' Bronx facility and was interviewed by Individual Defendant Miguel Vargas. Without any prompting, Defendant Vargas asked Plaintiff to discuss his criminal history, telling Plaintiff that Defendants had already conducted an informal search into his background and stressing that Defendants valued honesty regarding such matters.

16.     It was not clear to Plaintiff whether Defendants had learned about his conviction history through the Checkr background check or in some other way, given Mr. Vargas's talk of an informal investigation.

17.     Plaintiff acknowledged his conviction history but explained that he was nonetheless qualified for the position and that this history would not impede him from executing his duties.

18.     Defendants did not communicate any decision to Plaintiff on that day or any subsequent day.

19.     On August 20, 2021, Plaintiff left a voicemail with Defendants' human resources department requesting an update about his application. On August 24, 2021, Plaintiff received

an email from Defendants acknowledging the voicemail and inviting him to come to a career fair Defendants were hosting the next day.

20.     Plaintiff responded that he had already interviewed with Defendant Vargas on July 14, 2021, and that he was contacting Defendants to inquire about whether there had been a decision regarding his employment application.

21.     Plaintiff did not hear from Defendants again.

22.     Plaintiff was never provided with a copy of Article 23-A or of his consumer report Defendants sought to obtain through Checkr.  Plaintiff also did not receive an Article 23-A analysis from Defendants.


## LEGAL ANALYSIS

### The Fair Chance Act (New York City Human Rights Law)

23.     New York City has determined that "there is no greater danger to the health, morals, safety and welfare of the city and its inhabitants than the existence of groups prejudiced against one another and antagonistic to each other because of their actual or perceived differences, including those based on . . . conviction or arrest record." N.Y.C. Admin. Code § 8-101. Overbroad and/or arbitrary bans on hiring because of conviction histories undermine and violate New York City's clearly articulated policy. Such acts of discrimination "menace the institutions and foundation of a free democratic state." N.Y.C. Admin. Code § 8-101.

24.     Accordingly, New York City amended its Human Rights Law ("NYCHRL") on October 27, 2015, with the Fair Chance Act, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of

employment." *NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 1 (2015). *See also* NYC Administrative Code 8-107(11-a)(a)(1)(3).

25.    Beyond prohibiting premature inquiries into criminal records, the Fair Chance Act also makes it an unlawful discriminatory practice for an employer to "[d]eclare, print or circulate or cause to be declared, printed or circulated any solicitation, advertisement or publication, which expresses, directly or indirectly, any limitation, or specification in employment based on a person's arrest or criminal conviction." NYC Administrative Code 8-107(11-a)(a)(1).

26.    The Fair Chance Act specifies the following procedures for inquiring into criminal backgrounds, any deviation from which is unlawful:

> (b)  After extending an applicant a conditional offer of employment, an employer . . . may inquire about the applicant's arrest or conviction record if before taking any adverse employment action based on such inquiry, the employer, employment agency or agent thereof
>
> > (i)  provides a written copy of the inquiry to the applicant in a manner to be determined by the commission;
> >
> > (ii)  performs an analysis of the applicant under article twenty-three-a of the correction law and provides a written copy of such analysis to the applicant in a manner determined by the commission, which shall include but not be limited to supporting documents that formed the basis for an adverse action based on such analysis and the employer's . . . reasons for taking any adverse action against such applicant; and
> >
> > (iii)  after giving the applicant the inquiry and analysis in writing pursuant to subparagraphs (i) and (ii) of this paragraph, allow the applicant a reasonable time to respond, which shall be no less than three business days and during this time, holds the position open for the applicant.

N.Y.C. Admin Code § 8-107(11-a)(b).

6

27.     The Article 23-A requirements referenced by and incorporated into the Fair Chance Act prohibit employers from denying employment to an individual "when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless" employers can show either "a direct relationship" between the conviction(s) and the job or "an unreasonable risk to property or to the safety or welfare of specific individuals or the general public." N.Y. Corr. Law § 752.

28.     To determine whether such a direct relationship and unreasonable risk exist, Article 23-A requires employers to consider the following eight factors before taking any adverse action on the basis of a job applicant's criminal record:

>   (a)  The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
>
>   (b)  The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
>
>   (c)  The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.
>
>   (d)  The time which has elapsed since the occurrence of the criminal offense or offenses.
>
>   (e)  The age of the person at the time of occurrence of the criminal offense or offenses.
>
>   (f)  The seriousness of the offense or offenses.
>
>   (g)  Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.
>
>   (h)  The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

N.Y. Correct. Law § 753.

29.     Employers may not deny employment to applicants without first justifying such a decision on the basis of these factors and then giving applicants an opportunity to respond to this analysis. Under (g), prospective employers must also allow applicants to submit evidence of rehabilitation and good conduct to be considered in the analysis.

30.     Facilitating dialogue between prospective employers and applicants with conviction histories is among the primary purposes of the Fair Chance Act:

> By giving an applicant at least three business days to respond, the FCA contemplates a process in which employers discuss their reasons for finding that an applicant's record poses a direct relationship or unreasonable risk. The process allows an applicant to respond either orally or in writing and provide additional information relevant to any of the Article 23-A factors. After receiving additional information from an applicant, an employer must examine whether it changes its Article 23-A analysis. Employers may offer an applicant a similar position that mitigates the employer's concerns.

*NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act*, Local Law No. 63 at 9-10 (2015)[1]

> The FCA reflects the City's view that job seekers must be judged on their merits before their mistakes. The FCA is intended to level the playing field so that New Yorkers who are part of the approximately 70 million adults residing in the United States who have been arrested or convicted of a crime "can be considered for a position among other equally qualified candidates," and "not overlooked during the hiring process simply because they have to check a box."
> ..............
> While the FCA does not require employers to hire candidates whose convictions are directly related to a job or pose an unreasonable risk, it ensures that individuals with criminal histories are considered based on their qualifications before their conviction histories. If an employer is interested enough to offer someone a job, it can more carefully consider whether or not that person's criminal history makes her or him unsuitable for the position. If the employer wishes to nevertheless withdraw its offer, it must first give the applicant a meaningful opportunity to respond before finalizing its decision.

*NYC Commission on Human Rights Legal Enforcement Guidance on the Fair Chance Act, Local Law No. 63 (2015) Revised 06/24/2016 at 1-2.*

---

[1] https://www1.nyc.gov/assets/cchr/downloads/pdf/FCA-InterpretiveGuide-052419.pdf

31.     Furthermore, an employer's perception that an applicant has misrepresented his or her conviction history does not give the employer carte blanche to summarily reject the applicant on those grounds, as this situation is subject to its own Fair Chance Act procedures:

> Before disqualifying an applicant based on a perceived intentional misrepresentation, the employer is required to provide the applicant with a copy of any information that led the employer to believe that the applicant intentionally misrepresented their criminal record and afford the applicant a reasonable period of at least five business days to respond. If the applicant credibly demonstrates either that the information provided was not a misrepresentation or that a misrepresentation was unintentional, the employer is required to perform the Fair Chance Analysis before taking adverse action against the applicant.

*NYC Commission on Human Rights Legal Enforcement on the Fair Chance Act and Employment Discrimination on the Basis of Criminal History, Revised July 15, 2021* at 19.

32.     NYCHRL defines the employer-employee relationship expansively, since "natural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise who are not themselves employers shall be counted as persons in the employ of such employer." N.Y.C. Admin Code § 8-102(5).

33.     NYCHRL also provides that it shall be an unlawful discriminatory or retaliatory practice "[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so." N.Y.C. Admin Code § 8-107(6).

34.     Deprivation of rights guaranteed under the Fair Chance Act is in and of itself an injury:

> Donatella argues that the amendment is nonetheless devoid of merit because Harding did not suffer an injury as a result of Donatella's hiring practices. This court disagrees. The Fair Chance Act — in effect at the time — plainly provides that such a pre-offer inquiry regarding criminal history is an unlawful discriminatory practice. (*See* Local Law No. 63 (2015) of the City of New York § 2.) The New York City Administrative Code provides that a person aggrieved by an unlawful discriminatory practice may bring a cause of action for damages (including punitive damages), injunctive relief, or other appropriate remedies. (*See* Administrative Code §§ 8-107 (11-a) (g) and 8-502.) <u>And a person may be aggrieved for purposes</u>

of § 8-107 (11-a) even if their only injury was the deprivation of a right protected by the Code. (*See* Administrative Code § 8-102 [definition of "Person aggrieved"].)

CARMELA HARDING, Plaintiff, - v - DONATELLA GCT LLC, DONATELLA ARPAIA, MARK GERAGOS, Defendant., 2019 N.Y. Misc. LEXIS 1675, *3-4.

35.     Defendants violated Plaintiff's rights under the Fair Chance Act by conducting a background check on him and asking him about his conviction history without having first made him a conditional offer of employment.

36.     Defendants further violated Plaintiff's rights under the Fair Chance Act by declining his employment application on the basis of his conviction history without providing him with Defendants' Article 23-A analysis and a reasonable opportunity to respond to it.

37.     Defendants' failure to implement the fair review required under law led to Plaintiff's unemployment and loss of wages and compensation. Plaintiff suffered harm because he would have remained gainfully employed by Defendants but for Defendants' unlawful acts.

38.     Other Class members suffered similar harms. It is Defendants' general policy to (a) inquire into conviction histories before making conditional offers of employment and (b) reject applicants on the basis of their conviction histories without conducting an Article 23-A analysis and then allowing applicants to read and respond to that analysis.

39.      Defendants have acted consciously in breaching their known duties and depriving Plaintiff and other Class member job applicants of their rights under the NYCHRL.

40.     The ability to find employment is an essential aspect of reentering society for people with criminal histories. Recidivism declines when those individuals have viable employment prospects and other stabilizing resources in their communities. Defendants' policy of discriminating against individuals with criminal records frustrates such public policy objectives.

***New York Fair Credit Reporting Act (NY FCRA)***

41.    The NY FCRA requires that:

When a consumer reporting agency provides a consumer report that contains criminal conviction information, permitted by paragraph one of subdivision (a) of section three hundred eighty-j of this article, to a user, the person, firm, corporation or other entity requesting such report shall provide the subject of such report a printed or electronic copy of article twenty-three-A of the correction law governing the licensure and employment of persons previously convicted of one or more criminal offenses.

N.Y. Gen. Bus. Law § 380-g(d).

42.    Defendants violated the NY FCRA when they relied on a consumer report without providing Plaintiff with a printed or electronic copy of Article 23-A.

43.    Defendants have routinely and systematically failed to provide other job applicant Class members with a copy of Article 23-A of the Correction Law after a consumer report was ordered on them.

44.    This has caused Plaintiff and other job applicants concrete harm because it has denied them an opportunity to learn of their rights under Article 23-A of the Correction Law and created the risk of future harm.

45.    Defendants' failure to provide Plaintiff and other job applicants with a copy of Article 23-A of the Correction law denied them information about their legal right to be free from discrimination and about their remedies for that discrimination once it had occurred.

46.    Had Plaintiff received a copy of Article 23-A before Defendants took adverse action against him, he would have learned that Defendants could not deny him employment on the basis of his criminal history except insofar as the denial was supported by the factors enumerated in Article 23-A. Had he known this, he could have challenged Defendants to so justify their decision.

47.     Defendants' violation of the NY FCRA frustrates New York's public policy of increasing the employment prospects of persons with criminal convictions. *See* N.Y. Corr. Law § 753(1)(a).

48.     The harms suffered by Plaintiff and other job applicants are the precise harms that the New York Legislature enacted section 380-g to prevent. *See* L. 2008, c. 465, § 2, eff. Feb. 1, 2009 (enactment of provision was to "ensure that employers and prospective employees are informed about the mandates of Article 23-A of the correction law" because that information "will help to avoid illegal discrimination against persons with a criminal conviction").

### Fair Credit Reporting Act (FCRA)

49.     The purpose of the Fair Credit Reporting Act is to ensure that consumer reports are used "with fairness, impartiality, and a respect for the consumer's right to privacy." 15 USC § 1681.

50.     Criminal background checks constitute "consumer reports" because they are a "written . . . communication" that bears on "a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" and "is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . employment purposes . . . ." 15 USC § 1681a(d)(1).

51.     The FCRA provides that "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer" unless

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that

consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

**(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 USCS § 1681b(B)(2)(A)(i)-(ii)

52.     The FCRA provides that "before" a potential employer like Defendants may take "any adverse action based in whole or in part" on a consumer report, it "shall provide" the person who is the subject of the report with "(i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]." 15 U.S.C. § 1681b(b)(3)(A).

53.     Defendants violated the FCRA by failing to provide Plaintiff with a copy of either the background report they had procured on him or a description of his rights under the FCRA.

54.     As the Third Circuit observed:

The required pre-adverse-action copy of an individual's consumer report allows him to ensure that the report is true, and may also enable him to advocate for it to be used fairly—such as by explaining why true but negative information is irrelevant to his fitness for the job. The required pre-adverse-action notice of FCRA rights provides the individual with information about what the law requires with regard to consumer reports. The advance notice requirement, then, supports both accuracy and fairness. It helps ensure that reports are properly used and relevant for the purposes for which they are used.

*Long v. SEPTA*, 903 F.3d 312, 319 (3d Cir. September 10, 2018)

55.     Thus, Plaintiff was injured as a direct consequence of Defendants' FCRA violations.  So, too, was a Class of all applicants to Chef's Warehouse positions who (1) had criminal convictions; (2) had background checks done on them, (3) were not hired for the position, and (4) either did not receive a copy of the background report.

56.     Defendants' conduct toward Plaintiff indicates that they have routinely and systematically rejected other job applicant Class members on the basis of their background

reports without providing them with a copy of those reports or disclosing their rights under the FCRA.

## **CLASS ACTION ALLEGATIONS**

57.     Plaintiff Vellon brings this case as a proposed Class action pursuant to Federal Rule of Civil Procedure 23 ("Rule") on behalf of himself and each of the following three classes of persons (collectively, the "Classes"):

58.     **The NYCHRL Class**, defined as:

All individuals with criminal records who, during the applicable limitations period, applied for employment with Chef's Warehouse or Dairyland USA and were denied employment after Defendants conducted a background check, or otherwise inquired into their criminal history, without first receiving (a) a conditional offer of employment and/or (b) Defendants' Article 23-A analysis and a reasonable opportunity to respond to it.

59.     The **NY FCRA** Class, defined as:

All individuals with criminal records who, during the applicable limitations period, applied for employment with Chefs' Warehouse or Dairyland USA and (a) were denied employment or terminated by Defendants, (b) had consumer reports requested about them by Defendants, and (3) were not provided with a copy of Article 23-A of the Correction Law.

60.     The **FCRA** Class, defined as:

All individuals with criminal records who, during the applicable limitations period, applied for employment with Chefs' Warehouse or Dairyland USA and (a) were denied employment or terminated by Defendants, (b) had consumer reports requested about them by Defendants, and (3) were not provided with a copy of their consumer reports or an explanation of their rights under the FCRA.

61.     These three classes are collectively referred to as "the Classes." Members of one or both of the Classes are collectively referred to as "Class members."

62.     Plaintiff reserves the right to amend the foregoing class definitions based on information learned in the course of litigating this case.

63.     Class members are so numerous that joinder of all members is impracticable. The precise number of Class members is information uniquely within Defendants' possession, and Class members may be notified of the pendency of this action by published and/or mailed notice.

64.     There are questions of law and fact common to Class members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include but are not limited to:

(a)     whether Defendants violated the NYCHRL by undertaking a background check on Plaintiff and the NYCHRL Class, or otherwise inquiring about their criminal history, before extending to them a conditional offer of employment;

(b)     whether Defendants violated the NYCHRL by taking adverse action against Plaintiff and the NYCHRL Class without first providing them with an Article 23-A analysis and a reasonable period of time to respond to it;

(c)     whether Defendants violated the NY FCRA by failing to provide Plaintiff and the NY FCRA Class with a copy of Article 23-A of the Correction Law, in violation of N.Y. Gen. Bus. Law § 380-g(d);

(d)     Whether Defendants violated the FCRA by ordering background checks on Plaintiff and the FCRA Class without providing them with a copy of the background report or apprising them of their rights under the FCRA;

(e)     whether Defendants were willful in their noncompliance with the requirements of the NYCHRL, NY FCRA, and FCRA;

(f)     whether statutory damages, compensatory damages, exemplary damages and punitive damages for Class members are warranted; and

(g)     whether a declaratory judgement and/or injunctive relief is warranted regarding Defendants' policies and practices.

65.     Plaintiff's claims are typical of the claims of the Classes. Plaintiff's experience indicates that it is Defendants' standard practice to take adverse actions against applicants in disregard of NYCHRL, NY FCRA, and FCRA. Plaintiff is entitled to relief under the same causes of action as other Class members.

66.     Plaintiff will fairly and adequately represent and protect the interests of Class members because his interests coincide with, and are not antagonistic to, those interests. Plaintiff has retained Counsel who are competent and experienced in complex class actions. There is no conflict between Plaintiff and Class members.

67.     Class certification is appropriate under Rule 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Classes as a whole. Class members are entitled to declaratory and injunctive relief to end Defendants' uniform discriminatory practices.

68.     Class certification is also appropriate under Rule 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class members.

69.     Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class members have been damaged and are entitled to recovery as a result of Defendants' uniform policies and practices. The amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution of this litigation. A class action will allow more individuals to obtain relief, given the high cost of bringing individual actions, while also saving judicial resources.

## CAUSES OF ACTION

## FIRST COUNT

### VIOLATIONS OF NEW YORK CITY HUMAN RIGHTS LAW
(N.Y.C. Admin. Code. § 8-101 *et seq.*, § 8-107(11-a)(b)(i)-(iii))

*Brought by Plaintiff on Behalf of Himself and the NYCHRL Class*

70.      Plaintiff, on behalf of himself and the NYCHRL Class, incorporates all the preceding paragraphs of this Complaint as if fully alleged herein and further alleges as follows:

71.      Defendants took adverse action against Plaintiff and the NYCHRL Class based in whole or in part on the criminal history information contained within their consumer reports.

72.      Defendants violated the NYCHRL when they undertook background checks on Plaintiff and the NYCHRL Class before extending to them a conditional offer of employment.

73.      Defendant further violated the NYCHRL when they took adverse action against Plaintiff and the NYCHRL Class without:

      a.   providing Class members a written copy of their Article 23-A analyses, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(ii); and

      b.   allowing Class members a reasonable amount of time, not less than three days, to respond to the Article 23-A analysis, and holding the job open during that time, as required by N.Y.C. Admin Code § 8-107(11-a)(b)(iii).

74.      Each of these failures by Defendants establishes a separate cause of action and injured Plaintiff and the NYCHRL Class.

75.      As a result of Defendants' unlawful conduct, Plaintiff and the NYCHRL Class have lost employment opportunities, earnings and other employment benefits.

76.      In addition to damages, Plaintiff and the NYCHRL Class seek (a) an injunction compelling Defendants to comply with the procedures specified by the Fair Chance Act and (b)

declaratory relief to the effect that Defendants' discriminatory policies and practices are unlawful.

## SECOND COUNT

### VIOLATIONS OF NEW YORK FAIR CREDIT REPORTING ACT
### (N.Y. Gen. Bus. Law § 380-g(d))

*Brought by Plaintiff on Behalf of Himself and the NY FCRA Class*

77.     Plaintiff, on behalf of himself and the NY FCRA Class, incorporates all the preceding paragraphs of this Complaint as if fully alleged herein and further alleges as follows:

78.     Defendants violated the NY FCRA by procuring consumer reports from Plaintiff and the NY FCRA Class without providing them with copies of Article 23-A of the Correction Law.

79.     Defendants' policy caused concrete injury (including the risk of harm) to Plaintiff and the NY FCRA Class because the latter were deprived of a resource through which to advocate for their rights under Article 23-A and challenge Defendants' adverse action against them.

80.     Defendants acted willfully and in knowing or reckless disregard of their legal obligations to Plaintiff and the NY FCRA Class.

81.     Defendants' willful conduct is reflected by, among other things, the fact that they violated a clear statutory mandate set forth in N.Y. Gen. Bus. Law § 380-g(d).

82.     As a result of Defendants' actions, Plaintiff and the NY FCRA Class have been deprived of their rights, prevented from timely and effectively contesting the adverse action taken against them.

83.     Defendants' willful and/or negligent conduct makes them liable for actual damages, punitive damages, and attorneys' fees and costs, in an amount to be determined by the Court pursuant to N.Y. Gen. Bus. Law § 380-l and N.Y. Gen. Bus. Law § 380-m.

## THIRD COUNT

### VIOLATIONS OF FAIR CREDIT REPORTING ACT

### (15 U.S.C. § 1681 et seq)

### *Brought by Plaintiff on Behalf of Himself and the FCRA Class*

84.     Plaintiff incorporates all the preceding paragraphs of this Complaint as if fully alleged herein and further alleges as follows:

85.     The FCRA provides that "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer" unless

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 USCS § 1681b(B)(2)(A)(i)-(ii)

86.     The FCRA also provides that "before" a potential employer like Defendants may take "any adverse action based in whole or in part" on a consumer report, it "shall provide" the person who is the subject of the report with "(i) a copy of the report; and (ii) a description in writing of the rights of the consumer under [the FCRA]." 15 U.S.C. § 1681b(b)(3)(A).

87.     Defendants violated the FCRA when they denied employment to Plaintiff and FCRA Class members without providing them with copies of their background reports and apprising them of their rights under the FCRA.

88.     Defendants' violations of the FCRA were willful and wanton, the result of a systematic policy rather than an isolated error. Defendants therefore owe statutory and punitive damages to Plaintiff and FCRA Class members, since any person who willfully violates the FCRA is liable for actually damages or "damages of not less than $100 and not more than $1,000," as well as "such amount of punitive damages as the court may allow." Plaintiff and Class members are also entitled to reasonable attorneys' fees. 15 USCS § 1681n.

89.     Furthermore, the Court should enjoin Defendants' unlawful violations of the FCRA by ordering it to institute FCRA-compliant hiring procedures.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class members pray for relief as follows:

(a)     Certification of this action as a class action on behalf of the proposed Classes;

(b)     Designation of Plaintiff Vellon as representative of all Classes;

(c)     Designation of Plaintiff's counsel of record as Class Counsel for all Classes;

(d)     Injunctive and/or declaratory relief to correct Defendants' discriminatory policies and practices;

(e)     An award of all applicable compensatory and statutory damages for violations of NYCHRL, NY FCRA, and FCRA;

(f)     An award of all applicable punitive damages for all violations of NYCHRL, NY FCRA, and FCRA found to be willful;

(g)     An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

(h)     Pre-judgment and post-judgment interest, as provided by law;

(i)     Payment of a reasonable service award to Plaintiff Vellon, in recognition of the services he has rendered and will continue to render to Class members, and the risks he has taken and will take; and

(j)     Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of himself and all others similarly situated, demands a trial by jury on all questions of fact raised by the Complaint.

Dated: June 8, 2022

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

*/s/ C.K. Lee*
By:  C.K. Lee, Esq.

C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff and the Classes*