UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NOUCHIE VELLON, on behalf of himself
and others similarly situated,

       Plaintiff,

    -v-                          No.  1:22-CV-04809-LTS

THE CHEFS' WAREHOUSE, INC.,
DAIRYLAND USA CORPORATION, and
JOHN DOE

       Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER

Nouchie Vellon ("Vellon" or "Plaintiff"), brings this putative class action against

The Chef's Warehouse, Inc. ("Chefs' Warehouse"), Dairyland USA Corporation ("Dairyland"),

and individual defendant John Doe ("Doe") (collectively, "Defendants"), alleging violations of

the New York City Human Rights Law ("NYCHRL") as amended by the Fair Chance Act

("FCA"), N.Y.C. Admin Code section 8-101 et seq., the New York Fair Credit Reporting Act

("NYFCRA"), N.Y. Gen. Bus. Law section 380 et seq., and the federal Fair Credit Reporting Act

("FCRA"), 15 U.S.C. section 1681 et seq..  (Docket entry no. 26 ("First Amended Complaint" or

"FAC").)  The Court has jurisdiction of this matter pursuant to 28 U.S.C. sections 1331, 1332,

and 1367.

Defendants move to dismiss the First Amended Complaint pursuant to Federal

Rule of Civil Procedure 12(b)(6) and to strike class claims pursuant to Federal Rules of Civil

Procedure 12(f) and 23(d)(1)(D).  The Court has reviewed thoroughly the parties' submissions.

For the following reasons, Defendants' motion to dismiss the Amended Complaint is denied in

its entirety, and Defendants' motion to strike the class claims is denied without prejudice to renewal at the class certification stage.

<u>BACKGROUND</u>

The following facts, which are alleged in the FAC, are taken as true for the purpose of Defendants' motion to dismiss. Defendant Chefs' Warehouse is a national specialty food distributor, incorporated in Delaware with its principal place of business in Connecticut. (FAC ¶ 8.) Dairyland is Chefs' Warehouse's "operating company in New York City," and is incorporated in New York. (<u>Id.</u> ¶ 10.) Individual defendant John Doe is the person who interviewed Plaintiff for a position with Chefs' Warehouse on July 14, 2021.[1] (<u>Id.</u> 11.)

"Sometime around the beginning of July 2021," Plaintiff applied online for employment with Defendants. (FAC ¶ 13.) On July 8, 2021, Plaintiff was invited to interview at a hiring event hosted by Defendants on July 14, 2021. (<u>Id.</u>) Sometime around July 8, 2021, "Plaintiff also received a link from Defendants directing him to authorize a background check into his conviction history with Checkr or another background check service, which Plaintiff did." (<u>Id.</u> ¶ 14.) Plaintiff has a conviction history, the details of which are not specified in the FAC. (<u>Id.</u> ¶ 12.)

On July 14, 2021, Plaintiff was interviewed by individual defendant Doe. (FAC ¶ 14.) During the interview, Doe "asked Plaintiff to discuss his criminal history, telling Plaintiff that Defendants had already conducted an informal search into his background and stressing that Defendants valued honesty regarding such matters." (<u>Id.</u> ¶ 15.) Plaintiff does not specify

---

[1]     In Plaintiff's initial complaint, this interviewer was identified as "Miguel Vargas," but following consultation between Plaintiff's counsel and Defendants' counsel, the parties determined that Mr. Vargas could not have been Plaintiff's interviewer. (FAC ¶ 11 n.1.)

whether Defendants learned about his conviction history through the background check he had previously authorized, or through the "informal investigation" mentioned at the interview.  (Id. ¶ 16.)  Plaintiff acknowledged his conviction history, but asserted that he was nonetheless qualified for the position.  (Id. ¶ 17.)  Defendants did not communicate a hiring decision to Plaintiff on that day, or on any day after that.  (Id. ¶ 18.)

On August 20, 2021, Plaintiff left a voicemail with Defendants' human resources department, requesting an update on his application for employment.  (Id. ¶ 19.)  On August 24, 2021, Plaintiff received an email from Defendants, acknowledging receipt his voicemail and inviting him to come to a career fair the next day.  (Id. ¶ 19 at Exhibit B.)  Plaintiff replied, via e-mail, that he had already attended a career fair and undergone an initial interview, and was now awaiting a decision on his application.  (Id. ¶ 20.)  Four hours later, having not received a response from Defendants, Plaintiff sent another email, stating that he was "hoping that a response can be sent related to an employment decision in [his] application and interview that had taken place already."  (Id. ¶ 21.)  Defendants never responded to the inquiry, and Plaintiff and Defendants did not communicate further.  (Id. ¶ 22.)  At no point during the interview process did Defendants provide Plaintiff with a printed or electronic copy of article 23-A of the New York Correction Law.  (Id. ¶ 23.)  Nor did Defendants, at any time, provide him with a copy of any consumer report procured pertaining to him, or a description of his rights under the FCRA.  (Id. ¶ 54.)

Plaintiff asserts that "[i]t is Defendants' general policy to (a) inquire into conviction histories before making conditional offers of employment and (b) reject applicants on the basis of their conviction histories without conducting an Article 23-A analysis and then allowing applicants to read and respond to that analysis."  (FAC ¶ 39.)  Plaintiff further asserts

that Defendants "have routinely and systematically failed to provide other job applicant Class members with a copy of Article 23-A of the Correction Law after a consumer report was ordered on them."  (Id. ¶ 44.)  Finally, Plaintiff asserts that "Defendants' conduct toward Plaintiff indicates that they have routinely and systematically rejected other job applicant Class members on the basis of their background reports without providing them a copy of those reports or disclosing their rights under the [Fair Credit Reporting Act]."  (Id. ¶ 57.)

On June 8, 2022, Plaintiff filed this action against Chefs' Warehouse, Dairyland, and Miguel Vargas.  (Docket entry no. 1.)  On September 20, 2022, Plaintiff amended his complaint, removing Miguel Vargas and adding John Doe as a Defendant.  (FAC ¶ 11 n. 1.)

<u>DISCUSSION</u>

<u>Motion to Dismiss</u>

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citation omitted).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  Twombly, 550 U.S. at 555.  "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff."  Sara Designs, Inc. v. A Classic Time Watch Co. Inc., No. 16-CV-3638-LTS, 234 F. Supp. 3d 548, 554 (S.D.N.Y. Feb. 15, 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

NYCHRL/Fair Chance Act Claim

The Fair Chance Act, an amendment to the NYCHRL adopted on October 27, 2015, "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment."  See N.Y.C. Local Law 63 (2015); see also N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on the Fair Chance Act ("Enforcement Guidance") at 1.  "If an employer wishes to withdraw its offer, it must give the applicant a copy of its inquiry into and analysis of the applicant's conviction history, along with at least three business days to respond."  Enforcement Guidance at 1.  "With the aim of preventing an applicant's criminal history from tainting initial hiring decisions, the FCA regulates precisely when in the hiring process an employer may seek and use information regarding an applicant's criminal background."  Franklin v. Vertex Glob. Sols., No. 20-CV-10495-KPF, 2022 WL 392913, at *4 (S.D.N.Y. Feb. 9, 2022) (citing Enforcement Guidance at 4).  "The FCA prohibits the discovery and use of criminal history before a conditional offer of employment.  During this time, an employer must not seek or obtain an applicant's criminal history.  Consistent with Article 23-A[2], an employer's focus must instead be on an applicant's qualifications."  Id. (quoting Enforcement Guidance at 4).

---

[2]    Article 23-A of the New York Corrections Law forbids discrimination in hiring based on a prospective applicant's criminal history, other than in two prescribed circumstances. N.Y. Corr. Law §§ 750-755.  Employers may decline to hire an applicant on the basis of his/her criminal history (1) when the criminal conviction has a "direct relationship" to the position sought; or (2) if hiring the applicant would pose an "unreasonable risk to property or to the safety or welfare of specific individuals or the general public."  N.Y. Corr. Law § 752.  In determining whether either exception applies, employees are required under Article 23-A to consider eight factors: "(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses; (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person; (c) The

It is therefore, under the FCA, an "unlawful discriminatory practice" for any employer to "[m]ake any inquiry or statement related to the . . . criminal conviction record of any person who is in the process of applying for a position with such employer . . . until after such employer . . . has extended a conditional offer of employment to the applicant."  N.Y.C. Admin. Code § 8-107(11-a)(a)(3) (2018).  The FCA defines an "inquiry" as "any question communicated to an applicant in writing or otherwise, or any searches of publicly available records or consumer reports that are conducted for the purpose of obtaining an applicant's criminal background information."  Id.  A "statement," for purposes of the statute, is defined as "a statement communicated in writing or otherwise to the applicant for purposes of obtaining an applicant's criminal background information regarding: (i) an arrest record; (ii) a conviction record; or (iii) a criminal background check."  Id.

Here, Plaintiff has stated a claim for a violation of the New York City Human Rights Law, as amended by the Fair Chance Act.  Plaintiff pleads that Defendants (i) requested authorization to conduct a background check; (ii) asked Plaintiff to "discuss his criminal history;" and (iii) stated that an "informal search" had already been conducted into Plaintiff's background, and that Defendants "valued honesty regarding such matters."  These actions clearly constitute inquiries and statements, as defined by the FCA, into Plaintiff's conviction history.  As Plaintiff never received an offer of employment, conditional or otherwise, prior to these inquiries

---

bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities; (d) The time which has elapsed since the occurrence of the criminal offense or offenses; (e) The age of the person at the time of occurrence of the criminal offense or offenses; (f) The seriousness of the offense or offenses; (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct; (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public."  N.Y. Corr. Law § 753.

and statements, it is plausible that these inquiries and statements may support a viable claim under the NYCHRL.

Defendants argue that Plaintiff has "failed to allege any facts to support a plausible inference that Defendants improperly denied his application due to his criminal history," and that he therefore fails to state a claim under the NYCHRL. (Docket entry no. 30 ("Def. Mem.") at 12.) A showing of causation is not required, however, to state a claim for relief under this statute. In its regulations implementing the NYCHRL, the New York City Commission on Human Rights ("NYCCHR") enumerates six hiring practices that constitute per se violations of the FCA. See 47 R.C.N.Y. § 2.04(a). Among these per se violations are: "[u]sing applications for employment that require applicants to either grant employers permission to run a background check or provide information regarding criminal history prior to a conditional offer" and "[m]aking any statement or inquiry relating to the applicant's . . . criminal conviction before a conditional offer is extended." 47 R.C.N.Y. § 204(a)(2, 3). Defendants' email to Plaintiff requesting authorization to run a background check, and statements during his interview regarding Plaintiff's conviction history, plausibly constitute per se violations of the FCA. Drawing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff has pled allegations sufficient to state a claim for a violation of the NYCHRL, as amended by the FCA.

NY FCRA and FCRA Claim

Defendants do not provide any specific arguments as to why Plaintiff fails to state a claim under the NY FCRA or FCRA, stating only that "[s]imilarly, based on the bare bones allegations discussed above, [Plaintiff] also cannot maintain his causes of action for a violation of the New York Fair Credit Reporting Act or the Federal Fair Credit Reporting Act." (Def.

Mem. at 14.)  Such a conclusory assertion is insufficient to merit dismissal of Plaintiff's claims.

Even putting aside conclusory nature of Defendants' argument, however, the Court finds that

Plaintiff's factual allegations are sufficient to state a claim for relief.

> The NYFCRA provides that:
>
> When a consumer reporting agency provides a consumer report that
> contains criminal conviction information, permitted by paragraph one of
> subdivision (a) of section three hundred eighty-j of this article, to a user,
> the person, firm, corporation or other entity requesting such report shall
> provide the subject of such report a printed or electronic copy of article
> twenty-three-A of the correction law governing the licensure and
> employment of persons previously convicted of one or more criminal
> offenses.

N.Y. Gen Bus. Law § 380-g(d).  "Those who do not comply are liable for actual damages, as

well as punitive damages, if non-compliance was willful."  Millien v. Madison Square Garden

Co., No. 17-CV-4000-AJN, 2020 WL 4572678, at *1 (S.D.N.Y. Aug. 7, 2020) (citing N.Y. Gen.

Bus. Law §§ 380-l; 380-m.)

Here, Plaintiff does not explicitly plead that a consumer reporting agency

provided Defendants with a consumer report containing his criminal conviction information.

However, he does plead that Defendants requested Plaintiff's authorization to obtain such a

report (FAC ¶ 14), that he granted such authorization (id.), and that, during his interview,

Defendant Doe indicated an awareness of Plaintiff's conviction history (id. ¶¶ 15-16).

Defendants do not proffer any alternative means by which they could have learned of Plaintiff's

conviction history.  The Court, viewing all facts in the lights most favorable to Plaintiff, draws

from these facts draws the reasonable inference that Defendants procured a consumer report

containing Plaintiff's conviction history.  As Plaintiff further pleads that Defendants did not

provide him with a printed or electronic copy of Article 23-A (id. ¶ 23), he has stated a claim

under the NYFCRA.

Under the FCRA, before taking an "adverse action based in whole or in part on [a consumer report]," the person intending to take such action must provide "to the consumer to whom the report relates" "a copy of the report" and "a description in writing" of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i) and (iii).  "The statute further defines consumer report to include background checks conducted for employment purposes, and defines adverse actions to include 'a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee.'"  <u>Millien</u>, 2020 WL 4572678, at *1 (quoting 15 U.S.C. § 1681a).  Under section 1681n of the FCRA, "[a]ny person who willfully fails to comply" with these obligations is liable to the consumer for actual damages or statutory damages "of not less than $100 and not more than $1,000."  <u>See</u> 15 U.S.C. § 1681n(a)(1)(A).

Here, the Court has already found that Plaintiff has pled sufficient facts to support the reasonable inference that Defendants discovered his conviction history by conducted a background check.  Construing the pleadings in the light most favorable to the Plaintiff, the Court also finds that Plaintiff has pled sufficient facts to support the reasonable inference that Defendants took adverse action, as defined by the FCRA, "in whole or in part" on the basis of this background check.  Plaintiff pleads that Defendant Doe "stress[ed] that Defendants valued honesty regarding" his conviction history (FAC ¶ 15), that his conviction history was "plainly important" to his interviewer (<u>id.</u> ¶ 16), and that he was ultimately denied a job for which he had asserted he was otherwise qualified (<u>id.</u> ¶ 15).  He also pleads that he was not provided a copy of the consumer report procured by Defendants or a description of his rights under the FCRA.  (<u>Id.</u> ¶ 54.)  At this early stage in the litigation, and under the favorable standard afforded to the

Plaintiff as the non-moving party, Plaintiff has pled sufficient facts to state a claim under the FCRA.

The Court has reviewed Defendants' other arguments and finds them unavailing. Defendants' motion to dismiss Plaintiff's individual claims is therefore denied in its entirety.

<u>Motion to Strike Class Allegations</u>

Having denied Defendants' motion to dismiss Plaintiff's claims, the Court now considers Defendants' motion to strike Plaintiff's class allegations based on those claims. The complaint here seeks class treatment under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3). (FAC ¶ 58.) Plaintiff proposes the creation of three classes: an "NYCHRL Class," comprised of individuals whose rights were under the NYCHRL were allegedly violated by Defendants; a "NY FCRA Class," comprised of individuals whose rights under the NYFCRA were alleged violated by Defendants; and an "FCRA Class," comprised of individuals bringing claims under the FCRA. (<u>Id.</u> ¶¶ 59-61.) Federal Rule of Civil Procedure 23 permits class treatment when the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole, Fed. R. Civ. P. 23(b)(2) ("Rule 23(b)(2)"), and where "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("Rule 23(b)(3)"). Any class action—whether brought under Rule 23(b)(2) or 23(b)(3)—must satisfy four preconditions set out in Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; and the class

representatives must (3) have claims typical of the class claims and (4) be able to "fairly and

adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Federal Rule of Civil Procedure 23(c)(1)(A) "requires a court to 'determine by

order whether to certify the action as a class action' at 'an early practicable time after a person

sues or is sued as a class representative.'"  Camacho v. City of New York, 19-CV-11096-DLC,

2020 WL 4014902, at *3 (S.D.N.Y. July 16, 2020) (quoting Fed. R. Civ. P. 23(c)(1)(A)).

"Because a decision in the negative might be practicable even prior to discovery, Rule

23(d)(1)(D) allows a court to require that a complaint 'be amended to eliminate allegations about

representation of absent persons and that the action proceed accordingly.'"  Talarico v. Port

Auth. of N.Y. & N.J., No. 18-CV-0909-JPO, 367 F. Supp. 3d 161, 166 (S.D.N.Y. Feb. 12, 2019)

(quoting Fed. R. Civ. P. 23(d)(1)(D)).  In the Second Circuit, however,

> motions to strike are generally looked upon with disfavor . . . [and] a
> motion to strike class claims is even more disfavored because it requires a
> reviewing court to preemptively terminate the class aspects of litigation,
> solely on the basis of what is alleged in the complaint and before plaintiffs
> are permitted to complete the discovery to which they would otherwise be
> entitled on questions relevant to class certification.

Kassman v. KMPG LLP, No. 11-CV-3743-JMF, 925 F. Supp. 2d 453, 462 (S.D.N.Y. Feb. 7,

2013) (internal quotation marks, and alterations omitted) (citing Chen-Oster v. Goldman, Sachs

& Co., No. 10-CV-6950-LBS-JCF, 877 F. Supp. 2d 113, 117 (S.D.N.Y. July 17, 2012).  "District

courts in this Circuit therefore generally defer such questions to the class certification stage,

when the court has a fuller factual record."  Duran v. Henkel of Am., Inc., No. 19-CV-2794-

PAE, 450 F. Supp. 3d 337, 357 (S.D.N.Y. Mar. 30, 2020) (citation omitted).  When courts in this

Circuit do strike class allegations at the pleading stage, such action is appropriate only "as long

as the complaint itself demonstrates that the requirements for maintaining a class action cannot

be met."  Borgese v. Baby Brezza Enter. LLC, 20-CV-1180-VM, 2021 WL 634722, at *2

(S.D.N.Y. Feb. 18, 2021) (internal quotation marks and citation omitted); see also Camacho, 2020 WL 4014902, at *3-4 (striking class allegations when "the record is already clear" that the plaintiff could not meet the numerosity requirement of Rule 23, and leave to amend the complaint had already been denied).  "A court will deny a motion to strike as premature unless the defendants demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts [the plaintiffs] may be able to obtain during discovery." In re Libor-Based Fin. Instruments Antitrust Litig., 11-MDL-2262-NRB, 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) (internal quotation marks and citation omitted).

Defendants argue that Plaintiff "has failed to plead any facts showing the existence of a common plan or policy by Defendants to violate the NYCHRL, the NY FCRA, or the FRCA," and that his class allegations amount to no more than "rank speculation."  (Def. Mem. at 13-14.)  However, it is not inappropriate, at the pleading stage, for a plaintiff to extrapolate the existence a more generalized policy from the experiences of a single individual. In Talarico, the Plaintiff brought a putative class action, asserting claims under 42 U.S.C. § 1983, alleging that her employer engaged in a practice of "covertly surveilling employee medical examinations," based on her alleged individual experience being covertly videotaped while undergoing such an examination.  367 F. Supp. 3d at 173-74.  Noting that "the complaint nowhere suggest[ed] that the conduct of [the plaintiff's] examination was in any way unusual," the court found that "the factual allegations surrounding the single known instance of surveillance tend to support, at least circumstantially, an inference of a more widespread practice," and it denied the employer's motions to dismiss and strike class allegations on this basis.  Id.  Here, Plaintiff's factual allegations similarly tend to support an inference of a more widespread practice, such that it would be premature to presume he cannot meet the certification

requirements of Rule 23.  Plaintiff alleges that he applied online for employment and was invited

to at Defendants' "hiring event," in what could plausibly have been a regularized recruitment

process conducted by Defendants.  Indeed, when Plaintiff sought to follow up on his initial

interview, Defendants appear to have invited him to undergo the very same process that has

provided the factual predicate for his instant claims.  If other individuals underwent the same

process as Plaintiff—a plausible inference, given that hiring fairs definitionally involve

interviewing numerous candidates for a given position—then it is certainly plausible that there

are class members other than Plaintiff who may have a right to relief.  Therefore, to the extent

that Defendants argue that Plaintiff's class allegations must be struck for amounting to

conclusory speculation, that argument is without merit.

       For these reasons, Defendant's motion to strike Plaintiff's class claims is denied,

without prejudice to renewal at the class-certification stage.

#### CONCLUSION

       For the foregoing reasons, Defendants' motion to dismiss the Amended

Complaint is denied in its entirety.  Defendants' motion to strike the class claims is denied

without prejudice.  This resolves docket entry no. 29.

       This action will be referred to Magistrate Judge Moses for general pretrial

management.

SO ORDERED.


Dated: September 30, 2023
     New York, New York

                          **/s/ Laura Taylor Swain**
                          LAURA TAYLOR SWAIN
                          Chief United States District Judge